1

Priority  
Send  
Enter  
Closed  
JS-5/JS-6 ___  
JS-2/JS-3 ___  
Scan Only___

FILED  
CLERK, U.S. DISTRICT COURT

JUL 2 1 2005

CALIFORNIA  
DEPUTY

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10

11  RONALD A. DURHAM,                    )    No.   EDCV 04-0248-JTL
                                         )
12            Plaintiff,                 )
                                         )    MEMORANDUM OPINION AND ORDER
13       v.                              )
                                         )    DOCKETED ON CM
14  JO ANNE B. BARNHART,                 )
    Commissioner of Social              )
15  Security,                            )    JUL 2 2 2005
                                         )
16            Defendant.                 )
    _____        )    BY _____ 003
17

18                          **PROCEEDINGS**

19       On March 9, 2004, Ronald A. Durham ("plaintiff") filed a

20  Complaint seeking review of the Commissioner's denial of his

21  application for Supplemental Security Income benefits.  On April 2,

22  2004, the parties filed a Consent to Proceed Before United States

23  Magistrate Judge Jennifer T. Lum.  Thereafter, on September 10, 2004,

24  defendant filed an Answer to Complaint.  On November 24, 2004, the

25  parties filed their Joint Stipulation.

26       The matter is now ready for decision.

27  ///

28  ///

1 | **BACKGROUND**

2     On July 13, 1998, plaintiff filed his initial application for
3 Supplemental Security Income benefits. An Administrative Law Judge
4 ("ALJ") denied benefits in a decision issued on September 26, 2000.
5 (Administrative Record ["AR"] at 10).

6     On December 20, 2001 and July 22, 2002, plaintiff filed the
7 instant applications for Supplemental Security Income benefits. (AR
8 at 66-69, 70-72). Plaintiff alleged that beginning on March 19, 1985,
9 he was unable to work because he suffered from the following
10 impairments: depression, back pain, stomach pain, rheumatoid
11 arthritis, mental problems, and hepatitis C. (AR at 28, 32, 37). The
12 Commissioner denied plaintiff's applications for benefits, initially
13 and upon review. (AR at 28-41).

14     On February 21, 2003, plaintiff requested a hearing before an
15 ALJ. (AR at 42). On September 15, 2003, the ALJ conducted a hearing
16 in San Bernardino, California. (AR at 308-342). Plaintiff appeared
17 at the hearing with his counsel and testified. (AR at 311-26).
18 Joseph Malancharuvil, M.D. and Lowell L. Sparks, M.D., medical
19 experts, and Corinne Porter, a vocational expert, also testified. (AR
20 at 326-41).

21     On October 30, 2003, the ALJ issued his decision denying
22 benefits. (AR at 7-16). In his decision, the ALJ concluded that
23 plaintiff's degenerative disc disease at L5-S1, osteophytes at L3-5
24 and S1, occipital headaches, personality disorder with mixed and
25 antisocial features, mood disorder not otherwise specified, and
26 auditory hallucinations, more than minimally restricted plaintiff's
27 ability to perform basic work related activity and constituted severe
28 impairments. (AR at 11). According to the ALJ, however, none of

1 | these impairments met or equaled any of the criteria contained in the
2 | Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart
3 | P, Appendix 1. (AR at 11, 16). The ALJ also found that plaintiff did
4 | not suffer from a severe mental impairment. (AR at 14). The ALJ
5 | further concluded that plaintiff retained the residual functional
6 | capacity to perform a significant range of medium work. (AR at 14,
7 | 16). Ultimately, the ALJ found that plaintiff was not disabled
8 | pursuant to the Social Security Act. (AR at 16).

9 | On November 4, 2003, plaintiff filed a timely request with the
10 | Appeals Council for review of the ALJ's decision. (AR at 6). On
11 | January 13, 2004, the Appeals Council affirmed the ALJ's decision.
12 | (AR at 3-5).

13 |

14 | **PLAINTIFF'S CONTENTIONS**

15 | Plaintiff makes the following claims:

16 | 1. The ALJ erred in failing to give any weight to plaintiff's
17 | treating physicians' records.

18 | 2. The ALJ erred in assessing plaintiff's credibility and
19 | residual functional capacity, and in ignoring third party
20 | questionnaires.

21 | 3. The ALJ erred in finding that plaintiff's ailments did not
22 | meet or equal a Listed Impairment.

23 | 4. The ALJ erred in failing to give a complete hypothetical to
24 | the vocational expert.

25 | 5. The ALJ failed to fully develop the record.

26 | ///

27 | ///

28 |

3

1 **STANDARD OF REVIEW**

2      Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision
3 to determine whether the ALJ's findings are supported by substantial
4 evidence and whether the proper legal standards were applied. DeLorme
5 v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence
6 means "more than a mere scintilla" but less than a preponderance.
7 Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v.
8 Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir.
9 1988).

10      Substantial evidence is "such relevant evidence as a reasonable
11 mind might accept as adequate to support a conclusion." Richardson,
12 402 U.S. at 401. This Court must review the record as a whole and
13 consider adverse as well as supporting evidence. Green v. Heckler,
14 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible
15 of more than one rational interpretation, the ALJ's decision must be
16 upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

17

18 **DISCUSSION**

19 **A.    The Sequential Evaluation**

20      The Commissioner has established a five-step sequential process
21 for determining whether a claimant is disabled.    20 C.F.R. §§
22 404.1520, 416.920 (1991); Bowen v. Yuckert, 482 U.S. 137, 140-42
23 (1987).    At step one, disability benefits are denied if the
24 Commissioner determines that the claimant is engaged in substantial
25 gainful activity.    Bowen, 482 U.S. at 140.    At step two, the
26 Commissioner evaluates whether the claimant has a medically severe
27 impairment which significantly limits his physical or mental ability
28 to do basic work activities.    (Id. at 140-41). Step three requires a

4

1 consideration of whether the claimant's impairment is equivalent to
2 one of a number of listed impairments that are so severe as to
3 preclude substantial gainful activity. (Bowen, 482 U.S. at 141). If
4 the impediment meets or equals one of the listed impairments, the
5 claimant is presumptively disabled. (Id.). If the impairment is not
6 one that is conclusively presumed to be disabling, step four of the
7 evaluation determines whether the impairment prevents the claimant
8 from performing work he has performed in the past. (Id.). If the
9 claimant cannot perform his past work, the fifth and final step
10 determines whether he is able to perform other work in the national
11 economy in light of his age, education and work experience. (Id. at
12 142). The claimant is entitled to disability benefits only if he is
13 not able to perform such work. (Id.).

14 **B.   ALJ's Consideration of Plaintiff's Treating Physicians' Records**

15     Plaintiff contends that the ALJ failed to give weight to the
16 records of plaintiff's treating physicians.   Rather, plaintiff
17 contends that the ALJ relied on the opinions of consultative and non-
18 examining physicians. Plaintiff claims that the ALJ's failure to give
19 any weight to his treating physicians' records constitutes error.

20     In connection with his appeal, plaintiff submitted numerous
21 supplemental medical records chronicling his medical care at the
22 California Department of Corrections from July 26, 1990 to December 2,
23 2002.   (AR at 169 to 228).   The medical records indicate that the
24 treating physicians diagnosed plaintiff with psychosis, not otherwise
25 specified.   (AR at 171, 173, 175, 179, 186, 194, 195, 196).   The
26 records also indicate that plaintiff complained of back pain, mental
27 illness, and suffered from rheumatoid arthritis. (AR at 77, 177, 183,
28 184, 188).

1       Although the treating physicians identified plaintiff's symptoms,
2 made diagnoses, and proposed treatment, they did not render opinions
3 regarding plaintiff's functional limitations at work.  (AR at 170-180,
4 183-188, 193-196).  In the only opinion given by a treating physician
5 regarding plaintiff's residual functioning capacity, Julius Griffin,
6 M.D., opined, "I do believe he can work in some capacity as a
7 responsible worker - even starting several hours a week, & to
8 [increase] as tolerated.  This opinion does NOT include PAIN due to
9 PHYSICAL CAUSATIONS."  (AR at 186)(emphasis in original).  No other
10 treating physician offered an opinion with respect to plaintiff's
11 ability to work.

12      In his opinion, the ALJ cites to plaintiff's history of back and
13 leg pain, rheumatoid arthritis, hepatitis, paranoid ideation,
14 agitation, anxiety, depression, and psychosis, not otherwise
15 specified.  (AR at 11, 12-13).  Although plaintiff claims that the ALJ
16 did not give weight to the evidence in his medical records, plaintiff
17 does not identify the specific medical records that the ALJ allegedly
18 ignored.  "The mere existence of an impairment is insufficient proof
19 of disability.  'A claimant bears the burden of proving that an
20 impairment is disabling.'"  Matthews v. Shalala, 10 F.3d 678, 680 (9th
21 Cir. 1993)(quoting Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.
22 1985)(internal cite omitted).  Here, plaintiff has not shown that the
23 ALJ disregarded the contents of any treating medical record that
24 established plaintiff was disabled.

25      The Commissioner then obtained numerous opinions from
26 consultative and State Agency physicians regarding plaintiff's ability
27 to work.  On February 1, 2001, plaintiff received an Internal Medicine
28 Consultation from Conception A. Enriquez, M.D.  (AR at 229-32).  Dr.

1 | Enriquez found that plaintiff suffered from a decreased range of
2 | motion of the lumbosacral spine area and multilevel disc disease of
3 | the lumbar spine.  (AR at 232).  Dr. Enriquez concluded that:

4 |         The patient can occasionally lift and/or carry 50
5 |         pounds and frequently lift and/or carry 25 pounds.
6 |         The patient can stand and/or walk with normal
7 |         breaks for six hours in an eight-hour workday. The
8 |         patient can sit with normal breaks for six hours in
9 |         an eight-hour work day.

10 | (Id.).

11 |     On August 23, 2003, plaintiff received another Internal Medicine
12 | Consultation from Dr. Conception A. Enriquez.  (AR at 249-52).  Dr.
13 | Enriquez found tenderness in the epigastric area, tenderness on the
14 | lumbosacral spine area with very mild decreased range of motion, and
15 | mind degenerative anterior superior throughout.  (AR at 252).  Dr.
16 | Enriquez concluded that:

17 |         The patient can occasionally lift and/or carry 50
18 |         pounds and frequently lift and/or carry 25 pounds.
19 |         The patient can stand and/or walk with normal
20 |         breaks for six hours in an eight-hour workday. The
21 |         patient can sit with normal breaks for six hours in
22 |         an eight-hour day.

23 | (Id.).

24 |     On August 29, 2002, plaintiff received a Complete Psychiatric
25 | Evaluation from John S. Woodard, M.D.  (AR at 262-65).  Dr. Woodard
26 | determined the following:

27 |         Impairments are slight to moderate for interacting
28 |         with the public; slight for interacting with

1        supervisors and co-workers, for withstanding normal
2        stresses  and  pressures  in  the  workplace,  for
3        maintaining  concentration  and  attention,  and  for
4        performing  detailed,  complex  tasks;  and  none  for
5        performing  simple,  repetitive  tasks.  Incapacity  is
6        none  for  working  on  a  continuous  basis  without
7        special  supervision  and  slight  to  moderate  for
8        completing a normal workweek without interruption.

9   (AR at 264).  Dr. Woodard found the prognosis fair for improvement in
10  psychiatric status with appropriate treatment.  (Id.).

11       On September 17, 2002, Gwendolyn Taylor-Holmes, M.D., found that
12  plaintiff's  physical  findings  remained  unchanged  from  the  ALJ's
13  decision  of  September  26,  2000,  which  determined  there  were  no
14  significant physical limitations.  (AR at 282-83).  On September 19,
15  2002, Dr. Taylor-Holmes  further  opined  that  there  was  no  new  and
16  material  evidence  in  support  of  a  change  in  plaintiff's  residual
17  functioning capacity from the prior decision.  (AR at 291).  On
18  November 18, 2002, K. Gregg, M.D., reviewed plaintiff's file and
19  affirmed Dr. Taylor-Holmes' assessment.  (AR at 292).  Additionally,
20  on February 7, 2003, John R. Ford, M.D., reviewed plaintiff's file and
21  affirmed Dr. Taylor-Holmes' assessment.  (AR at 306).  On February 7,
22  2003, Dr. Gregg affirmed the ALJ's decision that plaintiff does not
23  have a disability.  (AR at 307).

24       On January 8, 2003, Jagvinder Singh, M.D., diagnosed plaintiff
25  with a history of low back pain, history of arthritis, auditory and
26  visual hallucinations, and Hepatitis B and C.  (AR at 298).  Dr. Singh
27  found no physical findings or limitations with respect to the back

28

8

1  pain, arthritis, and hepatitis. (Id.). As for the hallucinations,
2  Dr. Singh recommended further evaluation by a psychiatrist. Dr. Singh
3  further opined,

4           [T]he patient would be able to stand and/or walk
5           for six hours total in an eight-hour workday with
6           normal breaks. There are no restrictions on the
7           patient's ability to sit during an eight-hour
8           workday with normal breaks. He does not require
9           the use of any assistive devices. He would be
10          able to lift and/or carry 50 pounds occasionally
11          and 25 pounds frequently. Posturally, there are
12          no restrictions. Manipulatively, there are no
13          restrictions. Environmentally, the patient
14          should avoid working at extremes of temperature
15          and at heights.

16  (Id.).

17      On January 10, 2005, plaintiff underwent a Complete Psychiatric
18  Evaluation from Dr. Ernest Bagner, III. (AR at 300-03). Dr. Bagner
19  diagnosed plaintiff with mood disorder, possible anti-social
20  personality, hepatitis, arthritis, and back pain. (AR at 302). Dr.
21  Bagner further opined,

22          The patient would have zero to mild limitations
23          completing simple tasks. He would have mild
24          limitations maintaining concentration and
25          attention. He would have mild to moderate
26          limitations interacting with supervisors, peers
27          and the public, handling normal stresses at work,
28          completing complex tasks and completing a normal

1                workweek without interruption.

2    (AR at 302).

3        An ALJ should place greater weight on a treating physician's
4    opinion than that of an examining physician. See Andrews v. Shalala,
5    53 F.3d 1035, 1041 (9th Cir. 1995)("It is clear that more weight is
6    given to a treating physician's opinion than to the opinion of a non-
7    treating physician because a treating physician 'is employed to cure
8    and has a greater opportunity to know and observe the patient as an
9    individual.'")(quoting Magallenes v. Bowen, 881 F.2d 747, 751 (9th
10   Cir. 1989); see also Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.
11   1987). "The treating physician's opinion is not, however, necessarily
12   conclusive as to either a physical condition or the ultimate issue of
13   disability." Andrews, 53 F.2d at 1041. The proper weight that the
14   ALJ should place on a treating physician's opinion depends on whether
15   sufficient data supports the opinion and whether the opinion comports
16   with other evidence in the record. See 20 C.F.R. §§ 404.1527, 416.
17   927. Here, however, with one exception, no treating physician offered
18   an opinion regarding plaintiff's disabled status. (AR at 186). The
19   one treating physician who provided an opinion, moreover, determined
20   that plaintiff could perform work, comporting with the recommendations
21   of the consultative and state agency physicians. (Id.).

22       An ALJ may obtain the opinion of a consultative examiner if the
23   ALJ determines that "information [he] need[s] is not readily available
24   from the records of [the claimant's] medical treatment source, or [he
25   is] unable to seek clarification from [the claimant's] medical
26   source." 20 C.F.R. 416.912(f). The report of a consultative
27   physician called in by the Commissioner may serve as substantial
28   evidence in support of a disability determination. Magallanes v.

Case 5:04-cv-00248-JTL   Document 16   Filed 07/21/05   Page 11 of 22   Page ID #:27

1  Bowen, 881 F.2d 747, 752 (9th Cir. 1989); see also Stumpe v. Shalala,
2  1995 WL 7853, at *3 (N.D. Cal. Jan. 3, 1995) ("Since [the examining
3  physician's] opinion was consistent with the medical evidence of
4  record, it constituted substantial evidence supporting the ALJ's
5  decision.").

6      Here, plaintiff contends that the ALJ disregarded his medical
7  records in favor of the opinions of consultative and non-examining
8  physicians.   With the exception of Dr. Griffin, who opined that
9  plaintiff was capable of some work (AR at 186), none of the treating
10 physicians offered an opinion as to plaintiff's disabled status or
11 functional capabilities.   In light of the absence of opinions from
12 treating physicians regarding plaintiff's functional capabilities, the
13 Commissioner   properly   sought   such   opinions   from   plaintiff's
14 consultative physicians and non-examining physicians.  Thus, the Court
15 rejects plaintiff's claim that the ALJ improperly ignored the opinions
16 of plaintiff's treating physicians.

17 C.  **Rejection of Plaintiff's Credibility**

18     Plaintiff also objects to the ALJ's determination that plaintiff
19 lacked credibility regarding his alleged functional limitations.   The
20 ALJ found that "[t]he claimant's allegations regarding his limitations
21 are not totally credible for the reasons set forth in the body of the
22 decision."  (AR at 16).  In his decision, the ALJ cited to plaintiff's
23 inconsistent statements, conservative medical treatment, and his
24 ability to perform his daily routine.  (AR at 13, 14).

25     At the hearing, plaintiff testified regarding his pain and
26 functional   limitations.     First,   plaintiff   testified   that   he
27 experienced back pain when he sat, requiring him to stand up and walk

28

11

1  after 15 to 30 minutes, and that any lifting "sends shocks through my
2  body and pain." (AR at 313). Plaintiff also complained of headaches
3  that "threw [his] equilibrium off." (AR at 314). Plaintiff further
4  testified, "It's very difficult for me to concentrate on any one thing
5  I'm doing.... I hear voices so bad, and it's telling me to do
6  different things or do it this way or do it that way, and so I have a
7  very difficult time trying to concentrate." (AR at 318-19).

8       An ALJ need not believe every allegation of disabling pain. See
9  Ortega v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). Where an ALJ
10 finds a claimant's claims of disabling pain not entirely credible, and
11 there is no evidence of malingering, the ALJ must set forth legally
12 permissible, specific, clear and convincing reasons for doing so. See
13 Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) ("If there is
14 medical evidence establishing an objective basis for some degree of
15 pain and related symptoms, and no evidence affirmatively suggesting
16 that the claimant was malingering, the Secretary's reason for
17 rejecting the claimant's testimony must be 'clear and convincing,' and
18 supported by specific findings") (citations omitted). "The ALJ must
19 specifically identify what testimony is credible and what testimony
20 undermines the claimant's complaints." Morgan v. Commissioner of the
21 Social Security Admin., 169 F.3d 595, 599 (9th Cir. 1999).

22      Furthermore, "[i]t's not sufficient for the ALJ to make only
23 general findings; he must state which pain testimony is not credible
24 and what evidence suggests the complaints are not credible." Dodrill,
25 12 F.3d at 918 (citing Varney v. Secretary of Health and Human
26 Services, 846 F.2d 581, 584 (9th Cir. 1988), rev'd on other grounds
27 upon reh'g, 859 F.2d 1396 (9th Cir. 1988)). An ALJ's reasons for
28 discrediting a claimant's testimony must be sufficiently specific for

1  the reviewing court to assess whether the decision was impermissibly
2  arbitrary. <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345-56 (9th Cir. 1991).

3      As discussed below, the ALJ's reasons for rejecting plaintiff's
4  credibility do not withstand scrutiny.

5      **1.  Inconsistent Statements**

6      The ALJ rejected plaintiff's credibility based on an inconsistent
7  statement he made to his treating physicians. (AR at 13).  Internal
8  conflicts in a claimant's statements or testimony support a finding
9  that the claimant lacks credibility. <u>See</u> <u>Light v. Social Security</u>
10 <u>Administration</u>, 119 F.3d 789, 792 (9th Cir. 1997) (in weighing
11 claimant's credibility, ALJ may consider "inconsistencies either in
12 [plaintiff's] testimony or between his testimony and his conduct");
13 <u>see also</u> <u>Fair v. Bowen</u>, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (ALJ can
14 reject pain testimony based on contradictions in plaintiff's
15 testimony).

16     Here, the ALJ rejected plaintiff's credibility, in part, based on
17 inconsistent    statements    that    plaintiff    made    regarding    the
18 effectiveness of his psychotropic medication. (AR at 13).  In 2000
19 and early 2001, records show that plaintiff consistently reported to
20 his doctors that the psychotropic medications helped him. (AR at 194,
21 195, 200, 201).  On September 5, 2001, however, plaintiff reported to
22 his physician that the medications were "not helping at all." (AR at
23 186).  As noted by the ALJ, this statement is inconsistent with prior
24 reports of the effectiveness of the medications.    (AR at 13).
25 Beginning September 5, 2001 and continuing to November 30, 2001,
26 plaintiff refused psychotropic medications.   (AR at 173, 175, 177,
27 179, 182, 186).    In a medical record dated March 27, 2002, the
28 treating physician noted that plaintiff was taking his medications and

1  reported that those medications were helping him.  (AR at 171).  While
2  the September 5, 2001 medical record does represent an inconsistency
3  with plaintiff's prior statements, this single instance of an
4  inconsistent statement does not constitute clear and convincing
5  grounds for determining that plaintiff is not credible.  Furthermore,
6  plaintiff may have become tolerant of the medications or his mental
7  illness may have affected his ability to accurately assess the effect
8  of the medications.  Aside from this one statement, there does not
9  appear to be other inconsistent statements, nor does the ALJ cite to
10 any other inconsistencies.  This was not a sufficiently clear and
11 convincing reason for the ALJ to reject plaintiff's credibility.

12      **2.   Conservative Medical Treatment**

13      The ALJ also rejected plaintiff's credibility due to his
14 conservative and infrequent medical treatment.  The ALJ noted that
15 plaintiff did not take medication for back pain or arthritis in his
16 shoulders, knees, hands and ankles.  (AR at 12). The ALJ observed that
17 plaintiff's treatment for his back pain and depression was "routine,
18 conservative, and sporadic."  (AR at 14).  Notwithstanding plaintiff's
19 reports of depression, the ALJ commented that he was not seeing a
20 counselor.   (AR at 13).   The ALJ, moreover, cited to the medical
21 records, which contained an opinion that plaintiff exaggerated his
22 symptoms when beneficial to do so.  (AR at 13, 204).  Finally, the ALJ
23 noted that plaintiff's psychotropic medications appeared to alleviate
24 his symptoms and provide some relief.  (AR at 12).

25      An ALJ may reject a claimant's allegations of extreme pain where
26 the patient uses only mild pain medication.  See Orteza v. Shalala, 50
27 F.3d 748, 750 (9th Cir. 1994) (affirming ALJ's decision to reject
28 patient's credibility and noting that plaintiff "has not required

14

1 | prescription pain medication"); see also Tidwell v. Apfel, 161 F.3d
2 | 599, 602 (9th Cir. 1998) (rejecting plaintiff's credibility and noting
3 | pain did not require prescription medications); Ruiz v. Apfel, 24 F.
4 | Supp. 2d 1045, 1048 (C.D. Cal. 1998) (rejecting plaintiff's
5 | credibility and stating, "More particularly, [the ALJ] remarked that
6 | [plaintiff] had not been prescribed narcotic pain medication, as would
7 | be expected if she suffered from intense, chronic pain."); Matthews v.
8 | Shalala, 10 F.3d 678, 679-680 (9th Cir. 1993) (permissible credibility
9 | factors include limited treatment and minimal use of medications).

10 |     An ALJ may rely on a claimant's unexplained failure to seek
11 | treatment in rejecting a claimant's credibility.  Smolen, 80 F.3d at
12 | 1284 (ALJ may rely on claimant's "unexplained or inadequately
13 | explained failure to seek treatment or to follow a prescribed course
14 | of treatment"); Bunnell, 947 F.2d at 346 (identifying claimant's
15 | failure to seek medical treatment as proper reason to discredit
16 | claimant's testimony); Fair, 885 F.2d at 603 (9th Cir. 1989) (listing
17 | proper reasons to discredit claimant's testimony and stating, "Another
18 | such form of evidence is an unexplained, or inadequately explained,
19 | failure to seek treatment or follow a prescribed course of
20 | treatment.").

21 |     Plaintiff currently takes psychotropic medications for his
22 | psychosis, which appear to alleviate some of his symptoms according to
23 | plaintiff's reports to his treating physicians.  The only medication
24 | that plaintiff takes for his physical pain appears to be Tylenol, for
25 | the purpose of alleviating headaches and back pain.  (AR at 314).
26 | Plaintiff testified that he is currently not being treated by a doctor
27 | for this pain and that Tylenol is "the only thing I have."  (Id.).
28 | While plaintiff appears consistently to have sought medical treatment

1   while he was incarcerated, plaintiff's medical treatment has been
2   sporadic since his release from jail on July 12, 2002. (AR at 315).
3   Upon his release, plaintiff testified that he did not have the money
4   to visit the doctor. (AR at 314, 321-22). Plaintiff testified that
5   the hospital closest to his residence "made [him] sign a paper saying
6   [he] couldn't come back there anymore." (AR at 314). When asked
7   about seeking treatment at a neighboring hospital in Victor Valley,
8   plaintiff replied, "...I haven't had no money, no transportation, I
9   live all the way out in the other side of town in Hesperia. I haven't
10  even had bus fare or anything. And I have nothing, I have no means
11  for support for food or anything." (AR at 221-22). Given plaintiff's
12  inability to seek medical treatment at his local hospital, his lack of
13  funds, and the absence of affordable transportation, plaintiff
14  adequately explained his failure to seek medical treatment.

15      Accordingly, substantial evidence does not support the ALJ's
16  decision to reject plaintiff's credibility based on his conservative
17  and sporadic medical treatment.

18  **3.  Daily Activities**

19      Finally, the ALJ determined that plaintiff's ability to take care
20  of his personal needs, handle household chores, and take public
21  transportation rendered his claims of disability not credible. (AR at
22  14). The ALJ reasoned that plaintiff's ability to handle these daily
23  activities by himself suggest that "the claimant does not suffer from
24  an incapacitating or debilitating medical condition and is capable of
25  more than he is currently willing to admit." (Id.).

26      In evaluating a claimant's credibility, an ALJ must consider the
27  factors that Social Security Regulation 95-5p sets forth.  Those
28  factors include the claimant's daily activities and the adjudicator's

16

1 | personal observation of the claimant. <u>See</u> SSR 95-5p. "With respect
2 | to daily activities, this court has held that if a claimant 'is able
3 | to spend a <u>substantial part</u> of [his] day engaged in pursuits involving
4 | the performance of physical functions that are transferable to a work
5 | setting, a specific finding as to this fact may be sufficient to
6 | discredit a claimant's allegations.'" <u>Vertigan v. Halter</u>, 260 F.3d
7 | 1044, 1049 (9th Cir. 2001) (<u>emphasis in original</u>) (<u>citing Morgan</u>, 169
8 | F.3d at 600); <u>see also Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir.
9 | 1989). In <u>Fair</u>, however, the Ninth Circuit cautioned that "many home
10 | activities are not easily transferable to what may be the more
11 | grueling environment of the workplace, where it might be impossible to
12 | periodically rest or take medication." <u>Fair</u>, 885 F.2d at 603.

13 | Here, plaintiff did not engage in any daily activities that
14 | supported the ALJ's decision to reject plaintiff's credibility. In
15 | his most recent psychiatric evaluation on January 10, 2003, plaintiff
16 | reported that he was able to do household chores, cook, watch
17 | television, and take the bus. (AR at 14, 301). Plaintiff testified
18 | that watching television consumes a substantial part of his day. (AR
19 | at 101, 132, 301). Plaintiff's mother and wife also confirmed this to
20 | be true. (AR at 92, 137). Neither watching television, nor the other
21 | activities that plaintiff engages in, are transferable to a work
22 | setting. <u>See Vertigan</u>, 260 F.3d at 1049; <u>see also Morgan</u>, 169 F.3d at
23 | 600; <u>Fair</u>, 885 F.2d at 603. The Ninth Circuit has found that similar
24 | activities, such as grocery shopping, driving a car, or limited
25 | walking for exercise, do not "in any way detract from [a claimant's]
26 | credibility as to [his] overall disability." <u>Vertigan</u>, 260 F.3d at
27 | 1050; <u>see also Howard v. Hecklar</u>, 782 F.2d 1484, 1488 (9th Cir. 1986)
28 | (claim of pain-induced disability not gainsaid by capacity to engage

17

1  in periodic travel); Gallant v. Hecklar, 753 F.2d 1450, 1453 (9th Cir.
2  1984) (ordering award of benefits for constant back and leg pain
3  despite claimant's ability to cook meals and wash dishes). The Ninth
4  Circuit has repeatedly stated that a claimant need not be utterly
5  incapacitated in order to be disabled. See Fair, 885 F.2d at 603
6  ("The Social Security Act does not require that claimant be utterly
7  incapacitated to be eligible for benefits."); see also Vertigan, 260
8  F.3d at 1050 ("One does not need to be utterly incapacitated in order
9  to be disabled."). As such, no substantial evidence exists to support
10 the ALJ's finding that plaintiff's daily activities rendered his
11 testimony not credible.

12     In sum, the ALJ does not present clear and convincing reasons to
13 support his determination that plaintiff's testimony regarding his
14 functional limitations was not credible by virtue of his daily
15 routine.

16 **4. Third Party Questionnaires**

17     Plaintiff objects to the ALJ's failure to consider the Daily
18 Activities Questionnaire completed by Lillian L. Shows, plaintiff's
19 mother, and Yuen Bowser, plaintiff's wife. (AR at 92-97, 137-42).
20 Plaintiff contends that these third party observations support his
21 claims of disabling pain.

22     Where an ALJ discounts a lay person's testimony, he must give
23 sufficient reasons for doing so. Lewis v. Apfel, 236 F.3d 503, 511
24 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is
25 competent evidence that an ALJ must take into account, unless he or
26 she expressly determines to disregard such testimony and gives reasons
27 germane to each witness for doing so."). Friends and family members
28 who are in a position to observe a claimant's symptoms and daily

1  activities are competent to testify as to the claimant's condition.
2  See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); ("Disregard
3  of this evidence violates the Secretary's regulation that he will
4  consider observations by non-medical sources as to how an impairment
5  affects a claimant's ability to work.") (citing 20 C.F.R. §
6  404.1513(e)(2)); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)
7  (same).

8       An ALJ does not, however, need to discuss or credit a lay
9  witness's testimony if that testimony consists of medical opinions,
10 diagnoses, or conclusions. Vincent v. Heckler, 739 F.2d 1393, 1394-95
11 (9th Cir. 1984) ("The Secretary, however, need not discuss all
12 evidence presented to her. Rather, she must explain why 'significant
13 probative evidence has been rejected.'") (citations omitted); Nguyen
14 v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)(stating that, unlike
15 observations about effects of a claimant's impairments, "medical
16 diagnoses are beyond the competence of lay witnesses and therefore do
17 not constitute competent evidence") (citing 20 C.F.R. § 404.1513(a))).
18 "Although courts have upheld the use of lay testimony in some
19 instances, it is not the equivalent of 'medically acceptable . . .
20 diagnostic techniques' that are ordinarily relied upon to establish a
21 disability." Vincent, 739 F.2d at 1395.

22      Plaintiff's medical records contain two third-party Daily
23 Activities Questionnaires. In her questionnaire, dated January 10,
24 2002, Ms. Shows observed that plaintiff lives in significant pain,
25 sleeps a great deal, and watches television. (AR at 93). She
26 responded that plaintiff has difficulty with household chores, does
27 not bathe regularly, and requires assistance with shopping. (Id.).
28 In her questionnaire dated August 7, 2002, Ms. Bowser wrote that

1 plaintiff needs help taking showers, does not cook, does not manage
2 his finances, does no household chores, does not engage in any social
3 activities, experiences difficulty comprehending instructions, and
4 lives in pain.  (AR at 92-97).

5      Plaintiff claims that the ALJ erroneously does not refer to or
6 give reasons for disregarding the questionnaires of Ms. Shows and Ms.
7 Bowser.  Plaintiff erroneously contends that the ALJ was required to
8 expressly give reasons for discounting or rejecting their
9 questionnaires.  The Ninth Circuit only requires that the ALJ
10 expressly give reasons for discounting a lay person's testimony.
11 Apfel, 236 F.3d at 511; Dodrill, 12 F.3d at 919. The questionnaires,
12 however, were not signed under oath.[1]  Because the questionnaire
13 responses did not constitute testimony, the ALJ need not give reasons
14 for disregarding them.

15      The questionnaires, moreover, are contradicted by a Psychiatric
16 Evaluation dated January 10, 2003, which reported plaintiff's then
17 current level of functioning:

18         He is able to dress and bathe himself. He is able
           to do household chores and cook. When asked about
19         his daily activities, he notes, 'get up, eat and
           watch TV.' He notes that watching TV is his pass-
20         time. He is able to mange money....

21 (AR at 301).  Presumably, the information in the Psychiatric
22 Evaluation was reported by the plaintiff himself to his doctor.
23 Plaintiff's report to his doctor regarding his abilities contradict
24 the third party responses to those same questions regarding his

25

26
27      [1] The term "testimony" is defined as, "Evidence that a
competent witness under oath or affirmation gives at trial or in
an affidavit or deposition." Black's Law Dictionary 1318 (7th
28 ed. 1999).

20

1  abilities.  Thus, even if the ALJ erroneously failed to consider the
2  questionnaires, such failure would constitute harmless error.  See
3  Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 434
4  (9th Cir. 1988) (applying harmless error standard of review to ALJ's
5  decision and refusing to remand where error was harmless); Curry, 925
6  F.2d  at   1129  (harmless  error  rules  applies  to  review  of
7  administrative decisions relating to disability); Booz v. Secretary of
8  Health and Human Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984)
9  (adopting rule that evidence is sufficiently material to require a
10 remand "only where there is a reasonable possibility that the new
11 evidence  would  have  changed  the  outcome  of  the  Secretary's
12 determination had it been before him.").  Given the contradictions
13 between the plaintiff's abilities as reported by third parties and by
14 plaintiff himself in the Psychiatric Evaluation performed five months
15 later,  the  ALJ  did  not  err  in  disregarding  the  third  party
16 questionnaires.

17     In short, the ALJ committed no error in failing to give reasons
18 for disregarding the third-party Daily Activities Questionnaire.
19 Accordingly, plaintiff's claim with regard to the ALJ's failure to
20 consider the third party questionnaires fails.

21 **D.   Remand is Required to Remedy Defects in the ALJ's Decision**

22     The  choice  of  whether  to  reverse  and  remand  for  further
23 administrative proceedings, or to reverse and simply award benefits,
24 is within the discretion of the Court.  McAlister v. Sullivan, 888
25 F.2d 599, 603 (9th Cir. 1989).  Remand is appropriate where additional
26 proceedings would remedy defects in the ALJ's decision, and where the
27 record should be developed more fully.  McAlister, 888 F.2d at 603;
28 Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989); Marcia v.

1 │ <u>Sullivan</u>, 900 F.2d 172, 176 (9th Cir. 1990).  An award of benefits is

2 │ appropriate where no useful purpose would be served by further

3 │ administrative proceedings, <u>see</u> <u>Gamble v. Chater</u>, 68 F.3d 319, 322-23

4 │ (9th Cir. 1995), where the record has been fully developed, <u>see</u>

5 │ <u>Schneider v. Commissioner of the Social Security Administration</u>, 223

6 │ F.3d 968, 976 (9th Cir. 2000).

7 │     Here, the Court finds remand appropriate.  The reasons cited by

8 │ the ALJ in support of his rejection of plaintiff's credibility are

9 │ insufficient.  On remand, the ALJ must provide clear and convincing

10 │ reasons in support of his finding that plaintiff's allegations

11 │ regarding his limitations are not fully credible.[2]

12 │ **ORDER**

13 │     The Court, therefore, VACATES the decision of the Commissioner of

14 │ Social Security Administration and REMANDS this action for further

15 │ administrative proceedings consistent with this Memorandum Opinion and

16 │ Order.

17 │ **LET JUDGMENT BE ENTERED ACCORDINGLY.**

18 │ DATED: July 21, 2005

19 │

20 │ JENNIFER T. LUM
    │ UNITED STATES MAGISTRATE JUDGE

21 │

22 │ ───────────────────────

23 │    [2] Plaintiff has raised several other claims of error
    │ regarding the ALJ's decision, including determining that
24 │ plaintiff's ailments did not meet or equal a listed impairment,
    │ not providing a complete hypothetical to the vocational expert,
25 │ and failing to fully develop the record.  As explained above, the
    │ ALJ's error in assessing plaintiff's credibility constitutes
26 │ sufficient reason to remand this case.  Moreover, depending on
    │ the outcome of the proceedings on remand, the ALJ will have to
27 │ address plaintiff's remaining issues again.  In any event, the
    │ ALJ should consider all of plaintiff's remaining arguments when
28 │ determining the merits of plaintiff's case on remand.

22